IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 20-197 |
| | ) | |
| DENNIS RENFRO | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND DOWNWARD VARIANCE**

AND NOW comes the United States of America, by its attorneys, Cindy K. Chung, United States Attorney for the Western District of Pennsylvania, Brendan J. McKenna, Assistant United States Attorneys for said District, and hereby submits this response to the defendant's sentencing memorandum, Doc. No. 57.

On July 18, 2022, defendant Dennis Renfro filed a motion for both a downward departure and downward variance. The defendant specifically argues in favor of a substantial downward departure due to the policy statement provided by U.S.S.G. § 5K2.13, Diminished Capacity. (Doc. No. 57 at ¶¶ 17-22). The defendant separately argues that a downward variance is appropriate under the factors set forth in 18 U.S.C. §3553(a) (*id.* at ¶ 23) and that he has abided by conditions of release during his 23 months on bond (*id.* at ¶¶ 3, 26).

The Court should deny the defendant's motion. A thorough review of the expert report submitted by the defense (Doc. No. 57-1) does not evidence that the defendant's mental health conditions significantly reduced his mental capacity or substantially contributed to the commission of the offenses. U.S.S.G. § 5K2.13. Additionally, the substantial variance requested by the defense is not warranted when evaluated against the seriousness of the offenses and number of firearms involved. Finally, and as evidenced by his recent arrest, the government contests that the defendant abided by conditions of release. (Doc. Nos. 54, 56-1).

I. Diminished Capacity

U.S.S.G. § 5K2.13 provides that a downward departure may be warranted on the basis of diminished capacity if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." Application Note 1 to U.S.S.G. § 5K2.13 further explains:

> "***Significantly reduced mental capacity***" means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

(emphasis in original).

"[T]he Court may not depart below the applicable guideline range if . . . the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13.

"A defendant has the burden of proving entitlement to a departure by a preponderance of the evidence." *United States v. Hawkins*, 78 Fed.Appx. 193, 197 (3d Cir. 2003) (citing *United States v. McBroom*, 124 F.3d 533, 539 (3d Cir.1997)).

As an initial matter, the defense concedes, "Dr. Roberts's Report reveals that Dennis Renfro's intellect was such on the days of the 'straw purchases' to have enabled him to 'understand the wrongfulness of the behavior comprising [his] offenses'. (Doc. No. 57 at ¶ 17). Thus, in order to be eligible for this downward departure, the defendant must prove that he had a "significantly impaired ability to . . . control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13, Application Note 1.

In his motion for the downward departure, the defendant concludes that Dr. Roberts' report contains "findings and diagnoses" showing that the defendant "had a significantly impaired ability to 'control behavior that he [knew was] wrongful.'" (Doc. No. 57 at ¶ 18). Notably, the defense

2

motion neither identifies the diagnosis that provides a significantly reduced mental capacity nor cites to the portion of Dr. Roberts' report that articulates same.  The defendant is unable to do so.

Dr. Roberts' report does not specifically identify whether any current or past diagnosis provides a **significantly** reduced mental capacity.  (*See* Doc. 57-1).   Indeed, the words "significant" or "significantly" appear in Dr. Roberts' report only to describe the defendant's prior significant homicidal and suicidal ideations (*id.* at 4), the defendant's denial of significant use patterns of other illicit substances (*id.*), the defendant's lack of significant deficits in the Mini-Mental Status Exam, 2nd edition (*id.* at 5), and to describe categories provided by the Symptom Checklist-90-Revised (SCL-90-R) (*id*. at 6).

Additionally, the report does not address the role, if any, played by the defendant's substantial use of marijuana during the time of the charged offenses.  This is a critical omission as the Court is unable to depart from the "guideline range if . . . the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants."  U.S.S.G. § 5K2.13.  Dr. Roberts' report reflects that the defendant is a frequent user of marijuana, but the Presentence Investigation Report (Doc. No 46), which is not listed in the items reviewed by Dr. Roberts, is important when evaluating the eligibility for this downward departure.  The defendant informed pretrial services that he began smoking marijuana at the age of 16, continues to use same, and estimated using about an ounce a day.  (Doc. No. 46 at ¶ 39).  The defendant bears the burden of showing that he is entitled to this downward departure, and he is unable to do so without addressing the role played by his substantial marijuana use.

The government further notes that Dr. Roberts was unable to reach a clear diagnosis in this case.  After reviewing findings and diagnoses from prior assessments, Dr. Roberts writes, "This evaluation supports the diagnosis of Low Average to Borderline Intellectual Functioning as well as

mild Autism Spectrum Disorder, but Mr. Renfro might be better described by the criteria associated with Social (Pragmatic) Communication Disorder." (Doc. No. 57-1 at 9-10). Dr. Roberts' report goes on to define Social (Pragmatic) Communication Disorder, and the report concludes that the defendant's "combination of having low average cognitive abilities coupled with poor social intuition presents specific vulnerabilities." (*Id.*). Dr. Roberts never offers an opinion that (1) Social (Pragmatic) Communication Disorder substantially impaired the defendant's ability to control behavior that the defendant knows is wrongful, or (2) that "the significantly reduced mental capacity contributed substantially to the commission of the offenses." U.S.S.G. § 5K2.13. Those findings are required in order for the defendant to meet his burden of proving that he is entitled to the downward departure. As the defendant failed to meet his burden, the Court should deny his motion for this downward departure.

II.   Downward Variance

The defendant separately argues for a downward variance based upon the factors set forth in 18 U.S.C. §3553(a). In support of his requested sentence of probation, the defendant cites to his personal history and characteristics, to include a difficult childhood, susceptibility, and conduct while on bond. (Doc. No. 57 at ¶¶ 10-16, 24, 26).

In the present matter, the defendant seeks to avoid entirely the 18-24 month Guideline term of imprisonment. When considering a non-Guideline sentence, the Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Peugh v. United States*, 569 U.S. 530, 541 (2013) (citing *Gall v. United States*, 552 U.S. 38, 50 (2007)). The request for a sentence of probation is a large deviation that

4

requires an equally compelling reason. The government submits that a term of probation is not warranted based upon the reasons articulated by the defendant.

As addressed in its sentencing memorandum (Doc. No. 56), the defendant's crimes are quite serious. His conduct placed eleven handguns into the hands of individuals who did not complete the required background checks to acquire same, to include two felons and a minor. (Doc. No. 46 at ¶ 7). The defendant did so at a time where gun violence both nationwide and within the community is on a rise. (*See* Doc. No. 56 at 4-5). Furthermore, the defendant even admitted to law enforcement that he purchased a firearm for an individual who used it in a shooting and that he knew that another person he purchased a firearm for was prohibited from possessing same. (Doc. No. 46 at ¶ 7). A probationary sentence simply does not reflect the seriousness of these crimes.

Furthermore, the government is troubled by the defendant's recent arrest. Contrary to the defendant's motion for a downward departure and downward variance, the government submits that the defendant has not abided by the terms of his release while on bond. While pending sentencing for the instant crimes, the defendant was arrested for simple assault. (Doc. No. 54). The criminal complaint for that arrest does not reflect the "simple-minded" and "susceptible" individual depicted in the defendant's sentencing memorandum. (Doc. No. 57 at ¶ 15). Rather, the defendant allegedly pointed, what initially appeared to be, a gun at two individuals. (Doc. No. 56-1 at 5). Law enforcement ultimately recovered a BB gun with a tactical light on its under barrel from the defendant's residence that looked similar to a Glock model 17. (*Id.*). Violating a core condition of release, that is committing additional crimes, while pending federal sentencing should preclude the defendant from receiving the large variance that he seeks to obtain.

Accordingly, the government requests that the Court deny the requested variance.

III. Conclusion

The Diminished Capacity policy statement is inapplicable to the defendant. Additionally, the factors set forth in 18 U.S.C. §3553(a) do not support a sentence of probation.

WHEREFORE, for all of the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion for a downward departure and downward variance and impose a sentence within the Sentencing Guidelines.

                    Respectfully submitted,

                    CINDY K. CHUNG
                    United States Attorney

                    s/*Brendan J. McKenna*
                    BRENDAN J. MCKENNA
                    Assistant U.S. Attorney
                    U.S. Attorney's Office
                    700 Grant Street
                    Pittsburgh, PA 15219
                    Brendan.McKenna@usdoj.gov
                    PA ID No. 314315